Next case may be called. Summer 2015, 2598. Palmer Bank and Trust v. Zinnton Farms, T.C. Third-party plaintiff's accounts. Anna Stroud, Townsbrook, Arizona, Cobalt Bank Real Estate Corp. Third-party defendant appellee. Remember to take 50 minutes for final assessment, shared by appellees. Sir, Maggie? Yes. May it please the court. Mark Maguire on behalf of the appellants, Mr. Michael Minton, who's in the courtroom today, and his law firm. I would like to please reserve two minutes for rebuttal. All right. As the court knows, this is a summary judgment case. It's a well-known standard. For summary judgment to be proper, there must be no genuine issue of material fact, and judgment for the movement must be proper as a matter of law. Evidence is not weighed. It actually is construed in favor of the non-movement, and no credibility determinations are made. It's under that standard that the appellants are asking this court to not only reverse the district court's grant of summary judgment, but also, on a couple of issues, to grant what may be considered extraordinary relief, but is warranted in this case, of instructing the district court to enter judgment against third-party defendants O'Donnell and her employer, Coldwell, on certain issues that, when you do look at the record, which the district court didn't do, are undisputed. And specifically, the district court, in a couple of different errant ways, didn't think that it could look at parole evidence. Under a couple of different theories that we'll get into, it could. And when you look behind that curtain, so to speak, it reveals that, had the court looked at those things, there is no genuine issue of material fact. There is no dispute, but it's for the Minton appellants. It's not for the third-party defendants. Now, this case starts with a 2006 mortgage loan, but this is not a run-of-the-mill foreclosure dispute that has plagued the courts for probably the last decade. Did you and Dykema Gossett represent Mr. Minton below? Not until after the summary judgment ruling, Your Honor. The reason I'm asking is there are a lot of arguments and a lot of pages in these briefs in the Court of Appeals that are spent talking about issues that don't even appear to have been raised in the district court. I believe every issue was raised, Your Honor, maybe with a different argument or spin, but certainly everything we believe was before the district court. We're not real good at letting you reformulate new spins and new arguments here. Yes, Your Honor. Just so you know that. Understood, Your Honor. So it seems to me the heart of this case is not whether the power of attorney was broad enough to allow this person to have signed what she signed. That seems to be indisputably true. It was. The question is, having then used that power of attorney in the way in which she did, did she breach some sort of a duty to your client? That is one of the core issues, but I think really a precursor issue to that because the district court did rule that the power of attorney was a four corners, unambiguous, can't look at parole evidence. The district court, I submit, when it made that ruling, was looking only at, as you suggest, the terms that are undisputedly broad. But what the district court didn't appreciate, although in its factual background at page five of its opinion, it did note the allegations of the third party complaint, is that there is absolutely a question as to the scope and existence of the agency vis-a-vis who are the parties to this power of attorney. Could you possibly just preserve those arguments and move on to the next? Yes, Your Honor. I'm trying to tell you what seems to be the key argument. Yes, okay, thank you, Your Honor. Yeah, that's a good one, but let's talk about a bunch of other things. Thank you, Your Honor. It's not a real good idea when you've got 15 minutes. Understood, Your Honor, and I will skip to that. Yes, you're absolutely correct. When the district court said that the power of attorney authorized this broad authority to basically do any financial or real estate transaction, the district court did not adhere to another cardinal contract interpretation principle that you give effect to all the terms of the contract. Under the power of attorney, we have an obligation of Carrie O'Donnell to act in good faith when she's acting under the terms of the power of attorney. What the district court said was, well, the district court didn't even acknowledge that provision and said any way you act under this will be fine as long as you don't, as long as you act within the authority. That makes sense. Where is it clear that you raised that below? Well, there's repeated allegations of not being authorized. I'm talking about it's authorized but it's exercised not in good faith, which is different from it's not authorized, right? Yes. Well, paragraph, I believe it was. If all you argue is it's not authorized and the district court says it's authorized and you don't go on to say, yeah, even if it's authorized, it was exercised in bad faith, then you can't raise that to us now. That's why I'm asking where is that raised as a good faith exercise of power authorized argument. Well, I believe one of the places it was was paragraph 46 of the third amended complaint where there was an allegation that there was a breach of Ms. O'Donnell's breach of fiduciary duty in the manner in which she represented. Paragraph 46? Of the third amended complaint. I'm sorry, the third party complaint, not the third amended complaint. Third party complaint. Thank you. And if I have adequately addressed that issue, I would like to just briefly point out a case that was cited in Ms. O'Donnell and Coldwell's brief. That's a Sixth Circuit case. It's called the Andersons, Inc. v. Horton Farms, and it's 166F3308. And the reason I bring that to the court's attention is this. It was cited in their brief for a boilerplate law regarding parole evidence and whether you can review it in an unambiguous contract. But what it really stands for, and Judge McKeague, this was your case as a district court judge that was affirmed by the Sixth Circuit. And in that case... You wouldn't be citing it if it had been reversed. That's correct, Your Honor. But in that case, there was an individual being charged by his opponents as having signed a contract in his name personally. And he contended that, no, it may only say my name, but I was signing for my corporation. And, Judge McKeague, you looked behind the curtain. You said parole evidence was admissible to determine who is the party to this contract. And you found that extrinsic evidence revealed that there was no genuine issue of material fact for the defendant that he was not an individual signer. And I normally don't read passages from a case, but I couldn't say it better myself. In the Sixth Circuit, it said, We next consider the four contract signs simply Rodney Horton. Sound familiar? That's this case, Michael H. Minton. The court continued, Under Michigan law, where anything on the face of the paper suggests a doubt as to the party bound or the character in which any of the signers had acted in affixing his name, testimony may be admitted between the original parties to show the true intent. And in that case, the Sixth Circuit was citing Armstrong v. Andrews, 109 MISH 537, and Meacham on agency. So there was testimony in this case, and we've got a power of attorney that says nothing more than Michael H. Minton, just like in this case where it said nothing but Rodney Horton. And there's only one signature, but there were three defendants. And the district court, without really making a finding, just sort of glossed over and said, Yes, Michael H. Minton means Michael H. Minton, the LLC owner, Michael H. Minton, the law firm owner, Michael H. Minton, the individual. And it was not considered. The testimony was explicitly rejected by the district court saying, I can't look at parole evidence. But this court in Anderson's Inc. said, Exactly, yes, you can look at parole evidence if there's any question as to the signer and what capacity they were signing. And here, when you do look at the parole evidence, you find that just like in Horton, there is no genuine issue. Mrs. O'Donnell says over and over again, I really just screwed up here. If I had read the documents, I would not have signed guarantees. I thought that I was acting for the LLC. We had gone over that for every shape and form. I was the one who told them to set up the LLC for liability purposes. Gosh, I really screwed up. And none of that was considered. I agree with you on this argument. That means the bank loses. Is that correct? No, that's not correct, Your Honor, because if Mrs. O'Donnell showed up to the closing cloaked with apparent authority, which is a question of fact, but a fact finder could still say, Okay, Mrs. O'Donnell, you did not have authority to do what you did. But nevertheless, it looked like you did. And so you, O'Donnell and Coldwell, under the theory of apparent agency, are liable to the bank under the guarantees. Let me explain to you again why I asked you the question. Sure. I asked you to talk about how you either did or didn't plead and the district court did or didn't consider your argument that she didn't act in good faith. Yes. You continuously want to take us over to other arguments. So now you're right back to whether the court was right in how to interpret the power of attorney. Did it even apply to these other entities? So you pivot back to that, which both two of us have suggested that we would prefer that you talk about something else. Now, I don't think your predecessor attorney raised the argument you're raising now before the district court. Thank you, Your Honor. Two things. I do apologize. I did try to ask if I had answered the question. I didn't mean to move on if there were still questions. So I'll take those sort of in reverse order. To close the loop on the argument that we'd like to move on from, but just to answer your question where it was pleaded, the district court actually acknowledges on page 5 of the opinion and cites the two paragraphs of the third-party complaint. It says, Third-party plaintiffs alleged that Minton appointed O'Donnell for, quote, According to third-party plaintiffs, the district court said, it was expressly agreed by and between Minton, the Minton from O'Donnell, that she would not have authority to execute any individual guarantee on behalf of Minton or any individual guarantee on behalf of the Minton firm, citing paragraph 38 of the third-party complaint. So it was alleged and even noted by the district court that that was a theory of the case, that the power of attorney only authorized O'Donnell to act for the LLC. But the only way it shows up in the opinion is sort of as a recitation of the background and allegations without any legal analysis when getting to the determination that this was supposedly an unambiguous document, notwithstanding the dispute as to who the principal was under the document. But the district court decided that issue in that it decided that Ms. O'Donnell did not act beyond the scope of the power of attorney. That was the court's ruling. The scope would be the terms. So the judge did address that issue, simply ruled against you, right? I don't believe so. I think what the judge found was under these broad terms of financial and real estate transactions, that if it did bind all three defendants, then certainly it would be within this wide grant of authority. But what the actual things, terms to be taken out, she could do financial, real estate transactions, all of the things enumerated that an agent could do for her proper principal under paragraph two of the general power of attorney, and three and four and five, there's a number of enumerated items. The power of attorney, and I thought the judge's ruling addressed her authority under the scope of the power of attorney. The judge's ruling addressed what kinds of transactions that the agent could do without getting to the precursor issue of who is the principal. Because if the principal is not Mr. Minton or his firm, which all the parties to the power of attorney agree, then she's not authorized to do any of those enumerated powers for people who have not granted her authority under this document. That's just an argument that she acted beyond the scope of the power of attorney. So you're saying something I'm saying. That's correct, Your Honor. I'm sorry. Which part of Neff's opinion are you relying upon to say this was raised below? Page five of 14. The first opinion or the second one? There's just one opinion. There's just one opinion followed by an order. I'm sorry. What page? Page five of 14. That's record entry 1049. Counsel, I'm sorry. Okay. Is your principal argument that Ms. O'Donnell violated the liability provision, is that it, or is it that she acted beyond the scope of the power of attorney? It's both, Your Honor. She did not have authority to act for either of the appellants, only the LLC who's not an appellant here. And the judge did not rule as to whether she violated the liability provision. Is that right? That's correct. Judge Neff did not. If it turns out, if we think that your predecessor counsel didn't adequately or fully develop the argument regarding the liability provision, then we'd have to decide the case based upon whether Ms. O'Donnell acted beyond or within the scope of the power of attorney. Is that correct? That is correct. And I would like to, I know my red light is on, I only answered one part of two parts of Judge McKeek's question and it touches on that exact issue. Well, finish before you try to go back to judgment. That's exactly, yes. Does that complete your answer? Well, my answer is that the court certainly has the power, as we briefed in our reply brief, if it's genuinely just an issue of law and the record is fully developed and we're not trying to expand the record, which I believe this good faith issue has to do with. I mean, the power of attorney itself is in the record. I think it constitutes even an allegation at this point. It's part of the pleadings. It's got the good faith paragraph in it. If a district court is applying a contract, I would think it would apply every term that's in the record. So in that way, I think it is preserved. It was part of the record that was before the district court for granting or not granting summary judgment. If you file a complaint, you attach a document to it, the document has some language in it. That does not mean that that claim is before the court, particularly then if you don't argue it and you don't brief it. But because you're flipping around from claim to claim, it's extraordinarily difficult to figure out where something was actually argued, even if there are words someplace in the complaint or the attachment. You understand the problem? I do understand, Your Honor. Thank you. You're out of time, but we'll see if members of the panel have more questions. Thank you. I'm sorry to interrupt, and I just have one question. It seems to me that you focus on the power of the scope of attorney, and to the detriment of leaving yourself little time to focus on the issue of whether there was a breach of good faith. Should that convey to us that the latter argument is weaker than the former argument? Not at all, Your Honor. I've been doing my best, and I will look at the record again as I sit down, to field the questions and answer the questions that are important to the court and just basically didn't get to that portion. All right. You'll have your full rebuttal. Good morning. Michael Bingham, and I represent Caldwell Banker and O'Donnell. Judge McKee, I think that there are questions here whether or not there was a duty and whether or not the duty was breached. I believe Judge Neff correctly ruled . . . Judge Neff didn't rule on whether the duty was breached. She simply said the power of attorney was broad enough to sign the documents. She then doesn't rule upon whether in signing the documents, that then breached a duty that O'Connell had to somebody here. It's silent about that. The opinion is silent about that. Now, an argument could be made that that, because of the multiplicity of arguments here, that that argument wasn't made. That's correct. But I can't find any place that you objected to us considering that argument either. You seem to understand that's an argument, but you never say, but it wasn't raised below. Well, I argue that the . . . So we're kind of back to where we were before. Well, I argue that these broad allegations about a breach of a fiduciary duty that they raise . . . That's a different argument than the breach of the duty of fair dealing and good faith that's specifically spelled out in the power of attorney. I agree, Judge. Now, how can you possibly win this case without somebody taking a look at whether . . . not whether she was authorized to sign, not whether she did sign, but whether in doing so, she breached her express alleged understanding with Minton? I don't understand how we don't look at that. Well, I think Judge Neff, when she concluded, frankly, that no rational trier of fact could conclude that O'Donnell exceeded her authority or breached the provisions of the power of attorney . . . That's vis-a-vis the bank. There's no discussion in here about whether she breached the understanding or duty that she owed to Minton. Where is that discussed in Neff's opinion? Whether or not . . . No, Judge Neff took . . . Judge Neff's approach in this case involved the interpretation of the contract language of the power of attorney in which she concluded that it is unambiguous. There was no issue raised about ambiguity. And it binds Minion and these two other entities to the bank. That's what she rules on. It authorized O'Donnell to engage in the transactions that she engaged in at closing, which was to sign all of those documents that were . . . If the power of attorney is broad enough to authorize somebody to sign something, regardless of whether behind the scenes that violates your duty to your own client, you're scot-free. That's your proposition here? No, no, no, not at all, Your Honor. That is the question. The question is what is . . . Is there a duty? What is that duty with respect to O'Donnell vis-à-vis Minton? And in this case . . . Are you saying that she didn't breach any duties vis-à-vis Minton in light of her own testimony? I am. I am. Maybe you could explain that. Well, let's talk about her testimony. Let's talk about what happened there. That happened . . . Her testimony was given six years after the closing, and frankly, she had not been sued. She was not represented by counsel when she testified at her deposition. The record is clear that there had been several contacts between Minton and Minton's counsel and her with respect to the deposition. Are you impeaching your own client here? No, not at all. Not at all. She said what she said. She said what she said, and what's important about what she said, Your Honor, is more than once she said this took place seven years ago. She didn't even have a good recollection of the power of attorney itself. Testified, I believe, at page 13 of her debt that she didn't even have a good recall about the power of attorney. Testified that she did think that there were no personal guarantees involved. In her recollection at her deposition, that is what she testified to. And she never would have signed the documents had she read them? No, she said, frankly, that she understood that there would be no personal guarantees, that that's what her understanding was, and that she did not believe that she would sign them. I mean, she did testify to that. But, Judge, here we are, and the problem with looking at that testimony is that you are contradicting the general power of attorney that was drafted and given to her, signed by Minton, allowing her to sign the documents.  But she says that she believed she never had the authority to do that. She doesn't say, well, we talked about this, but then he gave me the broad power of attorney, and that gave me the power to do this, so I didn't breach any duties. I had the power. She never says that. What she did say was that she was not involved in any of the negotiations with the bank. She wasn't involved at all with any of the financial transactions involving the bank. She was very clear in her testimony about that, that between her and Minton, they didn't even have any discussions about the personal guarantees. I mean, that was not her duty in regard to this transaction. If the court looks at the loan commitment letter that was sent from the bank to Minton, it clearly says there are going to be personal guarantees that are required, and only the bank and its agents can change that requirement in writing. You don't think that under a power of attorney like this, if the principal orally, explicitly instructs that it be undertaken in a certain way, that that would be a violation of good faith to disregard that, speaking hypothetically, not saying that that's what happened here? Speaking hypothetically, if the principal orally attempts to modify the agreement, either the- No, that isn't what I said. I'm sorry. Not a modification of the agreement. I give you the power to do X, Y, and Z. It's easier for me to sign this power to give you all of this, but I'm telling you, only do X, Y, don't do Z. Please. Oh, but that is not what she- I can't hypothesize that, or I can? You can hypothesize that, but my point- You have no duty to- you can say, okay, I won't do Z, and then go in and do Z, because I have the power? But the problem is that that is not what happened in this case. Do you agree that if it is, there might be a violation of good faith? There can be a violation of good faith under some circumstances. Is that what's alleged here? No. Well, yes, it's alleged. Yes, it's alleged. Was it raised below? No. There's not enough evidence to show it? There is absolutely no evidence to establish that there was a lack of good faith or that that conversation even ever took place. The problem I'm having with that, I think it's the same problem Judge McKeague is having, is that where does the district court say that? The district court just seems to be saying the first step of that, which I can understand because that seems to be all that they were arguing. That's exactly. But assuming that they argued it, there isn't a ruling by the court on that, is there? Because the ruling goes to the first step, X, Y, and Z in my example, right? Yes. You've got to then go and say, but having done the Z that was allegedly instructed to do, there's not enough evidence to show that. But she doesn't say that. Is that correct? No, she does not. And that's strictly because it wasn't raised before her in the argument. And, again, this allegation that she was told by Minton not to sign personal guarantees is not what she testified to. She did not admit that she had any responsibilities at all with respect to the financial transactions. I see I'm about... Pardon me? She could just sign whatever. Sign his house away and everything? No, no, no. Not at all. I mean, she was given the power to go to that closing and sign the documents that were provided to her at that closing. She was a limited agent with respect to the closing on behalf of Minton. I mean, her obligation was to go there and sign the documents on his behalf. Again, what... Three-day window, she could do whatever. It was signed on one day, but it was strictly for purposes of the closing. You know, it is... If this claim that there was some oral agreement that was not followed... I see my time is up. Just one last question. Was Mr. Minton, even though he wasn't to be at the closing, was he given those closing documents to review prior to the closing? It's unclear in the record. Well, it may be unclear in the record, but if you know, I'm asking you, what's he given the documents? I do not know the answer to that question. All right. Thank you. Thank you. The case is submitted. Oh, I'm sorry. I don't want to forget the loyal opposition. Fellow counsel was to have reserved five minutes for my oral argument, but I appreciate that. May it please the Court, Thomas Termod on behalf of the other third-party defendants, Gina Strau and the Talon Group. Gina Strau, as you know, was the notary who was involved in all of the activity that we've been discussing this morning. Notably, not a single mention of my client was made by either of the two counsel and not a single question from the Court about my client was asked. We put an hour break that this appears to have been an afterthought, which it does. In fact, in Mr. Magyar's opening statement, he was asking for some extraordinary relief, specifically a judgment entered against only Cary O'Donnell and only Coldwell Bank are not against my clients. The three issues really which are raised by Mr. Minton and the Minton firm are, number one, that Ms. You realize when you argue this now that you give him a chance to address it in response, but he doesn't otherwise have that ability? You know that, right? Yes. Okay. Okay. I would like to address the Court raised the issue of whether or not this was raised at the District Court, specifically the two issues about the power of attorney that was filed by Ms. Strau and the affidavit of loss document as to the power of attorney and adding the clarifying language as to how Cary O'Donnell signed those documents. That was never raised at the District Court. It wasn't even mentioned other than in paragraph 25 of the complaint in a factual averment setting out a sequence of events. But I think it's even easier than that. So it wasn't raised at all at the District Court. It shouldn't be addressed here either. But I think it's simpler than that. Those two events, filing the affidavit of loss document and clarifying how Ms. O'Donnell signed the mortgage and the assignment of leases only goes to the mortgage. These defendants are bound to this debt or they're on the hook for the debt based on the guarantees. What Ms. Strau did with respect to the affidavit of loss document and the clarifying language about how Ms. O'Donnell signed has nothing to do with these defendants. That was only to get the mortgage recorded such that the LLC would be on the hook for the mortgage and that the debt itself would be secured by that mortgage. That's not these defendants. These defendants are bound by the guarantees, which were not recorded, not notarized, have nothing to do with what those last two issues were. With respect to the first issue about notarizing Mr. Minton's signature, he has acknowledged that's his signature. He admitted to it under oath. He said, yes, there's no question about whether or not that was Mr. Minton's signature on that power of attorney. That's really the only way my client, Ms. Strau,  because he made an allegation that she improperly notarized the power of attorney because he wasn't present before her when she notarized it. There's very little case law on the power of attorney, but the one that we cited and relied upon is the Hope v. Victor matter. That's 12 MISHAP 397, which held that a breach of the notary statute, even if there was a breach, doesn't give rise to a cause of action unless it's the proximate cause of the damage or the injury alleged, and that an improper notarization should not be regarded as the proximate cause where the person who purportedly signed the document did, in fact, sign it and was ready to swear that it was his signature. That's exactly what we have here. Mr. Minton has acknowledged it's his signature. Hope v. Victor applies. There is no proximate cause. Thank you. Thank you. Rebuttal. Thank you. Judge McKeague, I did go back into the record regarding the argument below regarding good faith under the power of attorney. What I located are a couple of different things. One is in record entry, Doc 126, page 1024, is the Minton defendant's response in opposition to Coldwell and O'Donnell's motion for summary judgment, and they actually offset in a block quote the entire provision. Now, granted, the next two, three paragraphs go on to argue why this was willful misconduct. It doesn't say a whole lot after that about good faith. But the whole provision is in block quotes. And even if the argument... But if you put provision in and then you argue about portions of it and not other portions, that doesn't mean you argued the other portion. Well, and to that point, I think the argument that this was even willful misconduct would have been a question of fact that makes no appearance in the district court's opinion after that. So you did argue the breach of good faith provision in the terms of the power of attorney, or you didn't? We did. The entire provision, which is about three sentences, so it's not this big, long, page full, is set forth in the brief. In addition to that... Other than the block quote, do the words good faith appear again? Not after the block quote. It's willful misconduct after that. But in addition, besides the brief, the pleadings are at issue on summary judgment. Paragraphs 39 and 40 of the third-party complaint do not use the words good faith. They outline the ways in which O'Donnell quote, failed to carefully review and examine those loan closing documents, failed to realize that she had also executed guarantees which purport to guarantee the obligation of the LLC by Minton individually and his firm. Under the pleading standards that were under, and we cited those, Smith was one of the six circuit cases we cited, I think there's more than enough allegations here to say she didn't act in good faith when she purported to obligate someone to documents that she didn't read. 39 and 40 appear to be just statements of what she did. Correct. And as I mentioned, I'm not saying that those... But you say raised it. It just says fiduciary relationship. Correct. Wouldn't the normal reader have taken that to be the relationship of a realtor to a business person that she's representing, or is that clear enough that they're talking about the relationship contained in the power of attorney? Your Honor, I think under a liberal pleading standard, I think, and not just confining to paragraph 46, but the paragraphs that we've set forth, certainly on notice that she did not... I think that's enough to get past the motion to dismiss, but when you're talking about arguments that are raised below, well, this was dismissed on the pleadings, but don't you have to make an argument about... Yes, and I believe we did that on page record 1024. It's page 8 of the Minton defendant's response in opposition to Coldwell and O'Donnell's motion. Thank you. And then, well, I guess I'm out of time. If the court wants to hear or else not... What's that? That answers my question. Okay. I was going to just address the other third-party defendants, but if I'm out of time, I'm out of time. You're out of time unless members of the panel have any further questions. Apparently there are no further questions. Okay. Thank you. Thank you, and case is submitted.